Submitted on record and appellant's brief March 15,
affirmed April 11, 1977

## STATE OF OREGON, *Appellant,*
*v.*
## JOSEPH L. SULLIVAN, *Respondent.*
### (No. Cr 6280, CA 7027)
562 P2d 560

James A. Redden, Attorney General, W. Michael Gillette, Solicitor General, and John W. Burgess, Assistant Attorney General, Salem, filed the brief for appellant.

No appearance for respondent.

Before Schwab, Chief Judge, and Lee and Tanzer, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

The state appeals from a pretrial order suppressing evidence. There were two witnesses at the suppression hearing—the defendant and a police officer. The defendant admitted he had marihuana plants growing in the window of his second-story apartment. His testimony was that the plants were 12 to 18 inches tall, that the lower part of the window was covered with cardboard and that just a few inches of the plants were visible above the cardboard. The police officer testified that he "had a tip on some marijuana plants growing in the window." He said that when he came to the premises and stood outside he could see the "bushy tops" of the plants which he recognized as marihuana. He testified that he borrowed a ladder, placed it against the building and climbed up the ladder to a point where he could peer in the window and count the number of plants. His stated reason was that he thought he had to determine the exact number in order to make an affidavit for a search warrant which he ultimately obtained. The affidavit for the warrant read in pertinent part:

"I was notified by a citizen that marijuana appeared to be growing in the upstairs window of an apartment * * *. I went to this location * * * and observed what appeared to be marijuana plants growing in the upstairs window * * *. A ladder was borrowed from the landlady. Upon climbing the ladder and looking into the window, I confirmed the plants to be marijuana, numbering six (6) which were planted in milk cartons."

At the conclusion of the suppression hearing the trial judge stated:

"If the officer was able to see the plants in plain view from the ground, then he could have gotten a search warrant. The fact that he did get a ladder and climbed up 35 feet to look in somebody's second story window taints the whole thing and makes suspect the statement that he could see what it was from the ground. He may have had suspicions but obviously he didn't have sufficient facts upon which to base an application for a search warrant * * *."

The written suspension order reads in part:

"* * * [The] Officer * * * while standing approximately 35 feet away, observed plants which he believed to be marijuana * * *."

The state concedes that the dispositive question here is whether the trial judge as the factfinder believed that the officer, while standing on the ground, recognized the plants growing in defendant's window as marihuana. The clear import of the judge's remarks is that he did not. The written order is capable of the interpretation that the officer, while standing on the ground, recognized the plants as marihuana, or what might conceivably be marihuana. We are mindful of the holding of *State v. Swain/ Goldsmith,* 267 Or 527, 517 P2d 684 (1974), that a judge's written order controls over inconsistent oral comments preceding the order. However, here the written order is ambiguous and we therefore rely on the oral comments to resolve the ambiguity. It is clear that the trial judge did not believe that the officer had probable cause to believe the plants were marihuana until he had climbed the ladder and peered into defendant's window. We do not interpret the state's brief as contending that absent probable cause to believe that the plants were marihuana the officer had the right to do what he did in order to determine whether they were.

Affirmed.