Argued and submitted May 29, affirmed as modified September 25, 1985

STATE OF OREGON,
*Respondent,*

*v.*

RANDY LEE MOSSMAN,
*Appellant.*

(C82-08-36587, C82-08-36651; CA A33692 (Control), A33693)
(Cases Consolidated)

706 P2d 203

Gary D. Babcock, Public Defender, Salem, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were

Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendant appeals from an order amending two judgment orders *nunc pro tunc* to reflect the trial court's oral imposition of two concurrent five-year minimum sentences, which had been omitted from the written orders. He argues that the trial court was without authority to correct the orders in these circumstances.

In 1982, the circuit court entered two orders which adjudicated defendant guilty of two counts of burglary in the first degree, sentenced him to two concurrent terms in prison for a maximum of 20 years, suspended execution of his sentences and placed him on probation for five years. At the time of sentencing, in open court, the judge had announced his intention to impose two concurrent 20-year sentences with two concurrent five-year minimums, but the orders which he signed did not include the five-year minimums. In the course of 1984 proceedings to revoke defendant's probation, a different judge issued an order amending the sentences to include the five-year minimums to conform with the original judge's announced intention.[1] On appeal, defendant contests the court's authority to amend the judgments imposing sentence.

■        The circuit court, having suspended execution of sentence, was without authority to amend defendant's sentences during proceedings to revoke his probation. *State v. Stevens,* 253 Or 563, 456 P2d 494 (1969); *State v. Wright,* 31 Or App 1213, 572 P2d 361 (1977). The state contends that the court had authority to correct "clerical errors" in the written orders to conform them to the trial court's orally expressed intention, relying on *Daugharty v. Gladden,* 217 Or 567, 341 P2d 1069, *cert den* 361 US 867 (1959), and *State v. Cardwell,* 48 Or App 93, 615 P2d 1198 (1980).

■        The state acknowledges the general rule that a trial court's decision is governed by the signed order and not by any statement the judge makes at the conclusion of a proceeding. *State v. Swain/Goldsmith,* 267 Or 527, 530, 517 P2d 684 (1974). The reason for this is that

> "* * * [a] judge may change his mind concerning the proper

---

[1] The judge stated that it was his understanding that a judge's articulated statement from the bench controls over a written judgment. As discussed *infra,* that is not the law.

disposition between the time of a hearing and his final action which takes place when he signs the order disposing of the matter. * * *" 267 Or at 530.

An exception to the rule exists for clerical errors.

The defendant in *Daugharty v. Gladden, supra,* was indicted for and convicted of the crime of uttering a forged bank check, but the judgment stated that the crime for which he had been tried was forgery. The court subsequently issued an order *nunc pro tunc,* without notice to the defendant, changing the word "forgery" whenever it appeared in the order to "knowingly uttering and publishing a forged bank check." The Supreme Court held that the correction of a clearly clerical error was proper, because the error was "apparent on the face of the entire court record and the correction thereof could not be successfully opposed." 217 Or at 578. The court quoted the following definition of "clerical error" from 1 Freeman, Judgments 284, § 146 (5th ed):

> " '* * * "[C]lerical" is employed in a broad sense as contradistinguished from "judicial" error and covers all errors, mistakes, or omissions which are not the result of the exercise of the judicial function. In other words, the distinction does not depend so much upon the person making the error as upon whether it was the deliberate result of judicial reasoning and determination, regardless of whether it was made by the clerk, by counsel or by the judge. * * *' " 217 Or at 577.

We have held consistently that the sentencing terms of an unambiguous written order must control over a judge's oral statements, regardless of evidence of the judge's intentions. In *State v. Wright, supra,* we gave effect to the filed order suspending execution of a sentence regardless of the trial judge's unequivocal oral statement that he intended to suspend imposition of sentence. In *State v. Hallin,* 43 Or App 401, 602 P2d 1134 (1979), we gave effect to a written order vacating a sentence and reinstating probation despite "perfectly clear" evidence that the judge intended only to reinstate probation. *See also State v. Yost,* 28 Or App 803, 808, 561 P2d 657, *rev den* 279 Or 301 (1977).

*State v. Cardwell, supra,* cited by the state, does not support the state's position. The trial court's order in that case first recited that the defendant had "admitted the testimony of witnesses concerning Count III of Indictment No.

79-8-471," and moved that Indictment No. 79-8-470 and Counts I and II of Indictment No. 79-8-471 be dismissed. The order subsequently dismissed Indictment No. 79-8-471, as well as Counts I and II of Indictment No. 79-8-470. 48 Or App at 96. We held that the fact that the order was internally inconsistent and ambiguous on its face was due to "an obvious scrivener's error." 48 Or App at 97. In that circumstance, the court was justified in examining the record to determine the trial court's real intent. The opinion noted that it was a limited exception to the general rule that the court shall not "go behind an unambiguous written order to determine the court's intent, regardless of clear evidence on the record of what that intent was." 48 Or App at 97.

■     In this case, the 1982 orders were clear and unambiguous in imposing two concurrent 20-year maximum sentences with no minimum sentences. It is not apparent from these orders that there must have been a clerical error, as was the case in *State v. Cardwell, supra.* The court, in revoking probation, was not permitted to look beyond the written orders to determine the judge's intention, regardless of the clarity of the evidence of that intention.[2]

Judgments modified to delete the five-year minimum sentences; affirmed as modified.

---

[2] The evidence of the original judge's intention consists of his statement during the first proceeding about the sentence he intended to impose and of the district attorney's representation during the probation revocation proceeding that the original judge said he would sign an amended judgment order or allow the revocation trial judge to sign such an order after he had reviewed the transcript of the first proceeding. Although this evidence may give a clear indication of the original judge's true intention in sentencing defendant, it may not be used to amend an unambiguous judgment.